655 So.2d 443 (1995)
Donna BILLIOT, Individually and as Natural Tutor for Brandi Marie Billiot, Sylvia Jean Billiot and Skylier Fay Billiot, Her Minor Children
v.
The ESTATE OF James RICHARDSON.
No. 94 CA 1794.
Court of Appeal of Louisiana, First Circuit.
May 5, 1995.
*444 J. René Williams, Houma, for plaintiffs-appellants Donna Billiot, et al.
James Ryan, III, New Orleans, for defendant-appellee United Service Auto. Ass'n.
Before LOTTINGER, C.J., and SHORTESS and CARTER, JJ.
LOTTINGER, Chief Judge.
This is a suit for damages arising from an automobile accident in which Reed Billiot was killed. Donna Billiot, Reed's surviving spouse, filed this suit for damages, individually and on behalf of her three minor children, against the estate of James Richardson and his insurer, United Services Automobile Association (USAA). Following trial on the merits, the jury returned a verdict in favor of defendants. From this adverse verdict, plaintiff appeals.

FACTS
On the afternoon of November 20, 1992, Kenneth LeCompte was driving his pickup truck northbound on La. Highway 57 when he collided, head-on, with a Buick Riviera driven by James Richardson. Reed Billiot was a passenger in the truck and Donna Akers was a passenger in the Buick. There were no survivors of the fiery collision. There were no eyewitnesses to the collision or to the events immediately leading up to the collision.
The accident occurred near the homes of Mr. and Mrs. Larry Robichaux and Curtis Shultis. Although these individuals heard the impact and saw its results, they did not see the actual collision or hear the squeal of tires prior to the crash.
Following a four day trial, the jury found no negligence on the part of Richardson, thereby relieving USAA of liability. Plaintiff has appealed assigning four errors:

*445 1. The trial court erred in its failure to instruct the jury that appellants were entitled to a presumption of negligence on the part of both drivers.
2. The jury erred in absolving James Richardson from any negligence whatsoever.
3. The jury erred in applying the sudden emergency doctrine to absolve James Richardson from negligence.
4. The trial court's instructions to the jury effectively and erroneously created a presumption of negligence on the part of Kenneth LeCompte while simultaneously creating a presumption of no negligence on the part of James Richardson.

ERRONEOUS JURY CHARGES
Plaintiff contends that the trial judge erred in refusing to instruct the jury that both drivers, being in the wrong lane, were presumed negligent.[1]
In brief, plaintiff specifically argues that the trial judge should have charged the jury concerning the Poche rule that an innocent third party injured as a result of a collision between two drivers is entitled to a presumption that each of the drivers is negligent and that the burden of proof falls upon each driver to exculpate himself from negligence. Poche v. Frazier, 256 La. 266, 232 So.2d 851, 856 (La.App. 4th Cir.), writ denied, 256 La. 266, 236 So.2d 36 (1970). However, at trial plaintiff did not object to the trial judge's failure to instruct the jury on the Poche rule. Plaintiff's only objection to the jury instructions was that the trial judge failed to include an instruction that would "charge the jury that both drivers being in the wrong lane would be presumed negligent."
To preserve the right to appeal the trial judge's refusal to give a requested instruction or the giving of an erroneous instruction, that party must not only make a timely objection, but must state the grounds of the objection. Belle Pass Terminal, Inc. v. Jolin, Inc., 92-1544, 92-1545 (La.App. 1st Cir. 3/11/94); 634 So.2d 466, 489, writ denied, 94-0906 (La. 6/17/94); 638 So.2d 1094; Martin v. Francis, 600 So.2d 1382, 1387 (La.App. 1st Cir.), writ denied, 606 So.2d 541 (La. 1992). Merely making a general objection without assigning any reasons is insufficient. Belle Pass Terminal, Inc., 634 So.2d at 489; Martin, 600 So.2d at 1387. A party's failure to object timely to an instruction, for the record and with specificity, constitutes a waiver of the objection. Berrera v. Hyundai Motor America Corporation, 620 So.2d 890, 892 (La.App. 4th Cir.1993).
Plaintiff has attempted to expand her specific objection at trial to encompass an objection to the trial judge's failure to give the Poche instruction. However, plaintiff did not specifically object to the trial judge's failure to instruct the jury on the Poche rule and, therefore, plaintiff waives her right to further consideration of that issue on appeal. The only alleged error that plaintiff objected to and which we may consider is the trial judge's failure to include plaintiff's special charge that both drivers in the wrong lane are presumed negligent. See Autin's Cajun Joint Venture v. Kroger Company, 93-0320, p. 7-8 (La.App. 1st Cir. 2/16/94); 637 So.2d 538, 542-43, writ denied, 94-0674 (La. 4/29/94); 638 So.2d 224.
Upon review, we note that the trial judge need only give those jury instructions which fairly and reasonably point up issues, and which provide correct principles of law for the jury to apply to those issues. Rhodes v. Winn-Dixie Louisiana, Inc., 93-1848, p. 9 (La.App. 1st Cir. 6/24/94); 638 So.2d 1168, 1173. It is the judge's responsibility to reduce the possibility of confusing the jury, and he/she may exercise the right to decide what law is applicable. Daigle v. Legendre, 619 So.2d 836, 839 (La.App. 1st Cir.), writ denied, 625 So.2d 1040 (La.1993). Additionally, an appellate court must exercise great restraint before overturning a jury verdict on a suggestion that jury instructions were so erroneous as to be prejudicial. Id.
*446 In the instant case, plaintiff requested that the trial judge give the following jury instruction:
SHIFTING BURDEN OF PROOF (VEHICLE COLLISIONWRONG LANE)
I have previously told you that the plaintiff has the burden of proving every essential element of his claim. However, there are certain exceptions to this rule.
Where a collision occurs between two motor vehicles and both vehicles are across the center line, there is a presumption that both drivers were negligent. The burden of proving that the collision was not caused by the negligence of either driver or that there was justifiable circumstances excusing their conduct, then shifts to that driver.
If both drivers are determined by you to be at fault, then you must assign a percentage of fault to each driver.
The record reveals that the trial judge instructed the jury, in part, as follows:
[I]t is a well established rule that when a collision occurs between two vehicles, one of which is in the wrong lane of traffic, there is a presumption that the driver in the wrong lane is negligent and that burden is on that driver or his representative to show that he was free from fault, however slight, that contributed to the accident.
The trial judge instructed the jury that a driver in the wrong lane is presumed negligent. It was not necessary to further instruct the jury that when both drivers are in the wrong lane, both drivers are presumed negligent. Such a conclusion was adequately covered within the trial judge's instruction.
After reviewing the jury instructions, we conclude that the trial judge gave instructions which fairly and reasonably pointed up the issues and which provided correct principles of law for the jury's application thereto. Therefore, we find that the trial judge did not err in refusing to give plaintiff's requested jury instruction.

NEGLIGENCE OF JAMES RICHARDSON
Plaintiff contends that the jury erred in absolving Richardson of all negligence. According to plaintiff, USAA did not meet its burden of proof with regard to Richardson's fault. Plaintiff cites Simon v. Ford Motor Company, 282 So.2d 126 (La.1973) (on rehearing), in support of her contention that USAA had to prove by clear and convincing evidence that Richardson was free of fault, however slight.
In Simon, the plaintiff was driving his vehicle in the proper lane when he was injured by the defendant who veered across the centerline and collided with his vehicle. Id. at 132. The supreme court applied the following principle:
When a driver on his wrong side of the road collides with another car which is in its correct lane of traffic, the driver is required to exculpate himself of any fault, however slight, contributing to the accident.
Id. at 133.
The court further stated that this principle applies to a "motorist who leaves his proper lane of the highway to injure a blameless person proceeding properly in the opposite lane". Id. Thus, the burden of proof shifts to the driver of the vehicle in the wrong lane only if the other vehicle is in its proper lane of travel. See Carter v. Travelers Insurance, Co., 535 So.2d 1001, 1004 (La.App. 2d Cir. 1988), writ denied, 536 So.2d 1202 (La.1989).
The principle articulated by the supreme court in Simon does not apply in the present case. Although Richardson did cross the centerline, he did not strike a person "proceeding properly" in the opposing lane. Richardson collided with LeCompte who was across the centerline, proceeding in the wrong lane and speeding. Because Richardson did not collide with a vehicle proceeding properly in the opposite lane, the burden of proof did not shift to USAA.
Having concluded that the Simon rule does not apply in the present case, we now review the jury's factual findings. At trial, plaintiff and defendants each presented expert witnesses who gave conflicting versions of how the accident occurred. Plaintiff's *447 expert stated that the negligence of both drivers contributed to the accident. On the other hand, defense experts concluded that the accident was caused entirely by LeCompte's negligence. Because there were no survivors or eqewitnesses to the collision, the verdict rested in large part on the testimony of these experts. In concluding that Richardson was not negligent, the jury evidently accepted the testimony of defense experts.
Where the testimony of expert witnesses differ, it is the responsibility of the trier of fact to determine which evidence is the most credible. Sistler v. Liberty Mutual Insurance Company, 558 So.2d 1106, 1111 (La.1990). Credibility determinations are subject to the strictest deference and the manifest error-clearly wrong standard demands great deference for the trier of fact's findings. Lirette v. State Farm Insurance Company, 563 So.2d 850, 852 (La.1990); Rosell v. ESCO, 549 So.2d 840, 844-45 (La. 1989). Where two permissible views of the evidence exist, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 883 (La.1993). The issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. Id. at 882. The reviewing court may not disturb reasonable evaluations of credibility and reasonable inferences of fact when viewed in light of the record in its entirety even though it feels its evaluations are more reasonable. Id.
However, where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable factfinder would not credit the witness's story, the court of appeal may find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination.
Id.
We note that all the experts had excellent credentials and were properly qualified in their respective fields. The jury was presented with two permissible views concerning the cause of this accident. The jury gave more weight to the defense experts, who attributed the cause of the accident to LeCompte.
According to the defense experts, Richardson was traveling at approximately 35 mph, and LeCompte was traveling at approximately 65 mph. The posted speed limit was 55 mph. Even plaintiff's expert testified that LeCompte was speeding at the time of the accident.
After examining the vehicles and the accident site, all of the experts agreed that prior to the accident LeCompte was traveling in the wrong lane. They agreed that, just before impact, LeCompte attempted to move back to his proper lane of travel. However, this attempt was unsuccessful as LeCompte was still partially in Richardson's lane at impact.
Defense experts also identified a "yaw mark"[2] at the accident site which was made by a tire on LeCompte's truck. According to defense experts, the "yaw mark" began in the southbound lane, the wrong lane of travel for LeCompte. The mark demonstrates that LeCompte made a severe steering maneuver in an attempt to avoid Richardson's vehicle which, just prior to impact, was traveling in the southbound lane. According to the experts, there was less than a one second interval between the "yaw mark" and the point of initial impact. Although plaintiff's expert disputed the existence of the "yaw mark," pictures of the mark were admitted into evidence.
All of the experts acknowledged that Richardson's vehicle was also partially over the centerline. Defense experts explained that Richardson crossed the centerline in a last minute attempt to evade LeCompte's oncoming truck. Although plaintiff's expert did not characterize Richardson's move as evasive, he did acknowledge that the maneuver occurred moments before impact.
*448 Expert testimony was also elicited regarding numerous gouge marks on the road surface at the accident site. Defense experts explained that the gouge marks identify the point of "maximum engagement" rather than the point of "initial contact". The majority of the gouge marks were found in the southbound lane, Richardson's proper lane of travel. Based on the location of the gouge marks, defense experts concluded that LeCompte was traveling in the wrong lane.
After carefully reviewing the record, we cannot say the jury was manifestly wrong in accepting the defense experts' testimony, as documents and objective evidence do not so contradict the testimony, that a reasonable trier of fact would not have credited their testimony.
Non-expert testimony also supports the jury's conclusions regarding negligence. Kerry Bourg testified that he saw LeCompte minutes before the accident and LeCompte bragged that he had "been up all night." In a statement to State Trooper Barry Hebert, Bourg stated that LeCompte appeared to have been drinking. Bourg and another witness also testified that they saw LeCompte drinking a beer just prior to the accident.
The jury may have considered this non-expert testimony in reaching its conclusion regarding Richardson's lack of negligence. When a jury's factual findings are based on credibility determinations of non-expert witnesses those findings are subject to the manifest error-clearly wrong standard of review. See Lirette, 563 So.2d at 852; Rosell 549 So.2d at 844-45.
Upon reviewing the testimony of the non-expert and expert witnesses and the entire record, we find no manifest error in the jury's conclusion that Richardson was free from fault.

SUDDEN EMERGENCY DOCTRINE
Plaintiff contends that the jury erred in applying the sudden emergency doctrine to absolve Richardson. Because in the previous assignment of error we found that the jury had sufficient evidence to absolve Richardson of negligence, we need not determine whether application of the sudden emergency doctrine was appropriate or necessary to the jury's conclusion.

PRESUMPTION OF NEGLIGENCE
Finally, plaintiff contends that the trial court's instructions to the jury effectively and erroneously created a presumption of negligence on the part of LeCompte while simultaneously creating a presumption of no negligence on the part of Richardson. This assignment of error is adequately addressed in our initial discussion regarding the jury instructions wherein we concluded that the instructions fairly and reasonably pointed up the issues and provided correct principles of law for the jury's application thereto. Further discussion of this assignment of error is unwarranted.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed against plaintiff.
AFFIRMED.
SHORTESS, J., concurs.
NOTES
[1] All expert witnesses testified that at the time of the collision, both vehicles were across the centerline.
[2] A "yaw mark" is a distinct tire mark which is made on the road surface when a driver makes a severe steering maneuver.